THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| RODRIGUEZ CANO, | ) ) ) | |
| *Petitioner*, | ) | No. 25 C 13161 |
| v. | ) ) | Chief Judge Virginia M. Kendall |
| PAMELA BONDI, Attorney General of the United States; KRISTI NOEM, Secretary of the Department of Homeland Security; TODD M. LYONS, Acting Director of U.S. Immigration and Customs Enforcement; RUSSELL HOTT, Director of Chicago Field Office, U.S. Immigration and Customs Enforcement, in their official capacities,[1] | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Respondents*. | ) | |

**OPINION AND ORDER**

Carlos Rodriguez Cano ("Petitioner"), a citizen of Mexico, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2241. (Dkt. 6 ¶ 6). On October 27, 2025, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner while working at a private construction site. (*Id.* ¶ 10). They detained him at the Broadview Processing Center, a federal detention facility in Broadview, Illinois. (*Id.* ¶ 11). This petition, brought against officers and agencies (collectively, "Respondents") involved in federal immigration enforcement, challenges the lawfulness of his detention. For the reasons below, the Second Amended Petition [6] is granted in part.

---

[1] The proper respondent to a noncitizen's habeas petition is the warden of the detention center in which he is detained. *Kholyavskiy v. Achim*, 443 F.3d 946, 949–53 (7th Cir. 2006). The clerk is directed to add Kimberly Ball as a respondent in the case caption, per the Government's indication of the proper respondent for the North Lake Processing Center. (Dkt. 5 at 2).

1

## BACKGROUND

The record in this case stands apart from other habeas petitions filed in this district. To start, it presents a handful of conflicting facts, though none so egregious as to sway the resolution of the relevant legal issues. First, what is seemingly undisputed: Petitioner alleges that he entered the United States lawfully with his mother in 1996 and has four children who are United States citizens. (Dkt. 6 ¶¶ 5, 7–8). Petitioner filed the instant petition on October 28, 2025—at which time he was in custody at the Broadview Processing Center—followed by an amended petitioned on November 3, 2025. (Dkts. 1, 6). On October 29, 2025, this Court ordered, pursuant to the All Writs Act, 28 U.S.C. § 1651, that the Government refrain from removing Petitioner outside the jurisdiction of the United States and/or transferring Petitioner to any federal judicial district other than those in the States of Illinois, Indiana, or Wisconsin, though if the removal to another U.S. state occurred prior to the entry of the order, Petitioner could stay there during the pendency of the petition so long as the Government did not remove him from the United States. (Dkt. 2); *see Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004)).

From there, Petitioner's Counsel and the Government diverge. Petitioner alleged that ICE never issued nor served him a Notice to Appear (NTA). (*Id.* ¶ 12). Nonetheless, the Government states that the NTA was issued on October 27, 2025, informing Petitioner of a scheduled hearing before an immigration judge in Detroit on December 8, 2025. (Dkt. 5 at 1). The Government provided documentation of the October 27 NTA in its Response, which Counsel's Reply characterizes as a "belated issuance" despite the date aligning with Counsel's version of events. (Dkt. 10-1; Dkt. 11 at 1).

Next, per Counsel's representations, Petitioner is at Broadview as of November 3, 2025, (Dkt. 6 ¶ 11), though the Government reported his location as the North Lake Processing Center

2

in Baldwin, Michigan, on October 31, 2025, which Counsel did not address in the Reply. (Dkt. 5 at 2; *see* Dkt. 11). Petitioner's Exhibit 2 shows that no information popped up for the Petitioner's Alien Registration Number (A-Number) in a search of the Automated Case Information System as of October 28, 2025. (Dkt. 6-2). Yet the Court's independent search of the Petitioner's A-Number on November 4, 2025, states that he is in ICE custody in Michigan. ICE ONLINE DETAINEE LOCATOR SYSTEM, https://locator.ice.gov/odls/#/search (last visited November 17, 2025). Nonetheless, Peititoner's subsequent transfer to Michigan does not deprive this Court of jurisdiction to adjudicate this case. *In re Hall*, 988 F.3d 376 (7th Cir. 2021). The Court held a status hearing on November 3, 2025, during which it entered a briefing schedule on the petition. That same day, Petitioner filed a second amended petition with leave of Court. (*See* Dkts. 1, 6.).

On November 14, 2025, Petitioner received a custody redetermination in front of an immigration judge in Detroit. (Dkt. 11-1). His request was denied under *In re Yajure Hurtado*, in which the BIA held that immigration judges (IJs) "lack authority to hear bond requests or to grant bond to [noncitizens] who are present in the United States without admission." *In re Yajure Hurtado*, 29 I&N Dec. 216, 255 (BIA 2025). A published BIA decision like *Yajure Hurtado* is binding upon every IJ in the country. *See Avila-Ramirez v. Holder*, 764 F.3d 717, 722 (7th Cir. 2014); 8 C.F.R. § 1003.1(g)(1).

## DISCUSSION

Rodriguez Cano petitions this Court under 28 U.S.C. § 2241(c) to issue a writ of habeas corpus ordering, among other things, his immediate release from ICE custody or other relief that the Court deems proper. (Dkt. 6 at 5–6).

A district court may grant a petitioner's request for a writ of habeas corpus if the petitioner demonstrates that he is in custody in violation of the Constitution or laws of the United States.

3

28 U.S.C. § 2241(c)(3). "Before and after the enactment in 1875 of the first statute regulating immigration, 18 Stat. 477, [habeas] jurisdiction was regularly invoked on behalf of noncitizens, particularly in the immigration context." *I.N.S. v. St. Cyr*, 533 U.S. 289, 305–06 (2001) (construing statute as leaving habeas in place for noncitizens); *see also Boumediene v. Bush*, 553 U.S. 723, 798 (2008) ("Liberty and security can be reconciled; and in our system they are reconciled within the framework of the law.").

## I.  Immigration and Nationality Act

In dozens of § 2241 cases appearing around the country, courts have nearly unanimously rejected the Government's view—embraced in *Yajure Hurtado*—that the mandatory detention provision of the Immigration and Nationality Act (INA) justifies the detention of long-term residents like Rodriguez Cano. That includes this Court in a prior case. *See Lira Perez v. Kristi Noem*, 2025 WL 3140692 (N.D. Ill. Nov. 10, 2025). Longstanding legal precedent has made clear that those nonresidents who are already present in the United States are entitled to a bond hearing in which they may secure their release if they can convince the officer or immigration judge that they pose no flight risk and no danger to the community. *See id.* (providing a full analysis of the comparison between the mandatory detention for new arrivals provision in 8 U.S.C. § 1225(b)(2)(A) and the discretionary detention for longer-term noncitizen residents in 8 U.S.C. § 1226(a)).

Petitioner suggests that the scope of § 1226(a) only comes into play for individuals who have been served with an NTA and who have a decision on removal proceedings pending. (Dkt. 6 ¶¶ 18–19). Setting aside that Counsel seems to be misinformed regarding his client's timely receipt of an NTA, this argument misstates the general applicability of the statute and stands in direct conflict to the analysis this Court laid out in *Lira Perez*, which was published while briefing in the

4

present case was ongoing. Counsel is incorrect to claim that there is "no statutory authority" for Petitioner's detention. (Dkt. 6 ¶ 19). Rather, the issue is that the proper section governing Petitioner's detention is § 1226(a), not § 1225(b)(2)(A).

## II. Procedural Due Process

Petitioner also argues that the detention has violated his Fifth Amendment guarantee of Due Process. (*Id.* ¶¶ 16–17).[2] This Court agrees. The Due Process Clause of the Fifth Amendment applies to noncitizens regardless of "whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. To determine whether a governmental decision violates the Due Process Clause, courts consider "the private interest that will be affected," "the risk of an erroneous deprivation of such interest through the procedures used," and "the Government's interest, including the function involved and the fiscal and administrative burdens that . . . the additional or substitute procedural requirement would entail." *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976); *Simpson v. Brown Cnty.*, 860 F.3d 1001, 1006 (7th Cir. 2017).

Rodriguez Cano has a private interest in his release, and there is a substantial risk of an erroneous deprivation of that interest. That invokes a private interest of the highest order, as "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). It is certainly true that the Government has an interest in the prompt execution of its removal orders, but that interest is not without limits. In executing removal orders against people like Rodriguez Cano, the government cannot, by law, indefinitely detain noncitizens and deprive them of a bond hearing that would

---

[2] While Petitioner is incorrect to claim that "the filing of an NTA" can be the basis of the due process claim, he properly asserts that detention without opportunity for bond is violative of his constitutional rights under these circumstances.

5

assess their present circumstances. Further, the fiscal and administrative burden on the Government is minimal as, prior to *Yajure Hurtado*, IJs routinely held bond hearings of this type.

It is true that the Supreme Court recently held that under certain circumstances, unadmitted noncitizens are "applicants for admission" and therefore possess fewer due process rights. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). But that case involved a habeas petitioner detained twenty-five yards from the border and "shortly after unlawful entry." *Id.* at 140. In that case, the Court held, that the "sovereign prerogative" of the political branches to "admit or exclude aliens" would be undermined if it "became inoperative as soon as an arriving alien set foot on U.S. soil." *Id.* But once the petitioner properly "effected an entry," whether at an airport or at an unlawful location, the Constitution's due process protections would come into full effect. *Id.*; *see also Zadvydas*, 533 U.S. at 693 (drawing a "distinction between an alien who has effected an entry into the United States and one who has never entered").

*Thuraissigiam* presents a scenario that is a far cry from the one before the Court. Rodriguez Cano has been in this country for nearly 30 years. He was pulled from a job site where he was working to provide for his children, who are U.S. citizens. Further, the *Thuraissigiam* Court explicitly distinguished long-present noncitizens in a closely related sphere, noting that its earlier holding in *St. Cyr* "reaffirmed that the common-law habeas writ provided a vehicle to challenge detention and could be invoked by aliens already in the country who were held in custody pending deportation." *Thuraissigiam*, 591 U.S. at 104. For these reasons, Petitioner has proven that his indefinite detention without a bond hearing violates his due process rights; he is entitled to a bond hearing.

### III. Alternative Claims

Petitioner also includes claims relating to the lawfulness of his arrest and his present immigration status. But the Court has no jurisdiction over those claims in the context of a habeas petition. If Petitioner and Counsel seek to advance civil rights claims, that must take the form of a separate suit under *Bivens v. Six Unknown Named Agents*, 403 U.S. 288 (1971). If Petitioner and Counsel determine that Rodriguez Cano has substantive claims impacted by *Castañon-Nava v. DHS*, which governs some warrantless arrests, those issues must be addressed in a separate filing under the terms of that consent decree; the Government is correct in stating that this Court need not and cannot address them here. (Dkt. 5); *see Castañon Nava v. Dep't of Homeland Sec.*, 2025 WL 2842146 (N.D. Ill. Oct. 7, 2025); *Castañon Nava v. Dep't of Homeland Sec.*, 435 F. Supp. 3d 880 (N.D. Ill. 2020). Petitioner will be able to make substantive arguments regarding his immigration status and eligibility during his bond hearing with the IJ.

### CONCLUSION

Rodriguez Cano's petition for a writ of habeas corpus is granted on due process grounds. Within five calendar days of issuance of this Order, Respondents must either: (1) provide Rodriguez Cano with a bond hearing before an IJ under 8 U.S.C. § 1226(a), at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Rodriguez Cano's continued detention; or (2) release Rodriguez Cano from custody, under reasonable conditions of supervision. The parties are to file a joint status report by November 26, 2025, that updates the court on the status of Rodriguez Cano's release status, including whether and when a bond hearing was held, and inform the Court of the reasons for the IJ's decision.

The Clerk is further ordered to substitute Kimberly Ball, whom Respondents identify as Rodriguez Cano's immediate custodian in Michigan, as the Respondent and to amend the case name in CM/ECF to reflect this change.

Finally, the Court notes its concern with Counsel's seeming confusion regarding the location of his client. The Court thus orders Respondents to ensure, within one day of this Order, that Rodriguez Cano obtain access to at least one phone call each with his Counsel and family.

_____
Virginia M. Kendall
United States District Judge

Date: November 19, 2025